UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CARMELLA BASEL, et al.,

       Plaintiff,                  CIVIL ACTION NO. 74-40135

       v.                           DISTRICT JUDGE STEPHEN J. MURPHY

CHESTER BIELACZYC, et al.,      MAGISTRATE JUDGE VIRGINIA MORGAN

       Defendants,

LOLA HELLEM, et al.,

       v.

ISMAEL AHMED, in his official
capacity as Director of the MICHIGAN
DEPARTMENT OF HUMAN SERVICES,

JANET OLSZEWSKI, in her official
capacity as Director of the MICHIGAN
DEPARTMENT OF COMMUNITY HEALTH,

and PETER PLUMMER, in his official capacity
as Executive Director of MICHIGAN STATE
OFFICE OF ADMINISTRATIVE HEARINGS
AND RULES,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

      Plaintiffs brought this action alleging that they were not receiving timely hearings on their applications for welfare benefits, and in 1977 a stipulated Consent Judgment was entered

by the court. This matter is now before the court on the defendants' Motion to Vacate the Consent Judgment (#5) and the Plaintiffs' Motion to Hold the Defendants in Contempt (#8).[1] Defendants filed a response to the petition, (#13) and plaintiffs filed additional pleadings as well. All pleadings have been carefully considered. Oral argument was held on this matter in November, 2008. For the reasons discussed in this Report, it is recommended that the defendants' Motion to Vacate the Consent Judgment be granted, that pursuant to Fed. R. Civ. P. Rule 60(b) the Consent Judgment be Vacated, the plaintiffs' Motion to hold the Defendants in Contempt be denied, and the case be dismissed with prejudice.

*Background and Summary*

In 1974, plaintiffs, applicants for welfare benefits through Michigan's Department of Social Services (MDSS) alleged that they had not received a final hearing on their claims within time limits set forth in federal regulations. They sought class certification. They sued John T. Dempsey, the Michigan Director of the Department of Social Services under 42 U.S.C. § 1983. That statute provides a vehicle to bring a federal cause of action against state and local officials who, while acting under the color of state law, deprive an individual of a right secured to him by

---

[1] Defendants' Motion for a Protective Order (#6) to delay the state's need to respond to the propounded discovery until after the district court's ruling on the two other motions and until after a Rule 26(f) conference is granted by separate order. According to defendants (#5) this is the third petition filed by plaintiffs in the past 15 years. In 1993, the court did not issue a ruling on the petition, and in 2001, it dismissed the petition for plaintiffs' failure to comply with a local court rule. Those proceedings are not included on the current docket. The petition filed in June, 2008, was stricken by the Clerk's Office because plaintiffs' counsel failed to properly docket and file the petition pursuant to CM/ECF procedures. In July, 2008, plaintiffs filed a new petition (#8), which is currently before the court. It is not identical, but is substantially the same and defendants' motions will be deemed responsive to it, even though they were filed first.

the Constitution or federal law.  42 U.S.C. § 1983.  Plaintiffs premised their case on federal regulations which directed states to reach certain types of administrative decisions on welfare benefits within defined time periods.  45 C.F.R. § 205.10(a)(16) (1976) [90 days for Medicaid and ADC] and 7 C.F.R. § 271.1(o)(1977) [60 days for food stamps].  Plaintiffs sought prompt hearings and decisions on their applications.

After two years, the matter was resolved between counsel with an agreed upon "consent judgment."  In September, 1977, U.S. District Judge James Harvey, entered a nine-page Consent Judgment pursuant to counsel's stipulation (Attachment A to Petition).  The court made no findings related to a basis for federal jurisdiction and made no findings of any violation of the Constitution or federal statutes.  The Consent Judgment certified a class which included "all persons who had applied to the MDSS for a hearing pursuant to 45 C.F.R. § 205.10(a)(16) with respect to ADC, Medical Assistance, and Social Services claims, or pursuant to 7 C.F.R. §271.1(o) with respect to Food Stamp Program claims, and who have not received final administrative action as of the date of the consent judgment, and all persons who may request such hearings in the future."  (¶1) The parties stipulated that there was evidence of non-compliance with the time limitations in the two regulations and there was a backlog.  (¶2)  The Consent Judgment provided, again on stipulation, that "as of July 1, 1978, Mr. Dempsey, his successors, officers, agents, employees and person in active concert with him are permanently enjoined from failing to accord to plaintiffs and their class prompt, final and definitive administrative action on their hearing requests within 90 days of such requests regarding Aid to Families with Dependent Children, Medical Assistance and Social Services cases, and within 60

days of such requests in Food Stamp cases." (Consent Judgment, ¶4, Attachment A). The order included requirements for staffing levels of one full time ALJ for every 285 hearing requests received,[2] 30 percent of one full time equivalent (FTE) typist for every 285 hearing requests received, and 25 percent of one FTE case management clerk for every 285 hearing requests received. (¶5 ) The judgment provided that staffing levels are not separately enforceable but are enforceable if defendants are not meeting the timeliness standards set forth in the Consent Judgment. Under its terms, "the only proper measure of compliance is the timely processing of each hearing request." A time schedule for reduction of the backlog was imposed and additional time schedules for mailing and other procedures were ordered. The judgment provided that the "Court shall retain jurisdiction over this action to enforce the provisions of this Consent Judgment." (¶ 10). The judgment also stated: "¶11: "In view of the fact that federal benefit programs are subject to change, nothing in this consent judgment shall be construed to deny to any party to this action the right to move the Court for modification of such Consent Judgment in the event that changes in federal law occur which would conflict with its provisions." Plaintiff's costs of $35.08 (filing fee and service) were ordered paid and the issue of attorneys' fees was reserved. The court subsequently awarded fees but they are not part of this record.[3] The Judgment was signed by counsel for Michigan Legal Services and Assistant Attorney General Robert N. Rosenberg for Frank J. Kelley, Michigan Attorney General.

---

[2] Under that formula, defendants would be required to have 71 ALJs (apparently they have only 16 in the department plus five temporarily reassigned from another department) (Per representation of plaintiff's counsel at oral argument, p. 17)

[3] The original docket entries are not preserved on this record.

Since the time the consent judgment was entered, the welfare system and Michigan's executive branch procedures and structure have changed. In addition, courts have clarified the limitations on an individual's ability to bring a legal challenge under § 1983 based on the kind of "spending clause" legislation which underlies this case. The Michigan Department of Social Services has been abolished and ADC is no more. The petition itself recognizes this change, noting that the Michigan Department of Human Services administers a Family Independence Program, which provides cash assistance to low income families as part of a block grant to the state. ALJs are not longer part of DSS. There is a State Office of Administrative Hearings and Rules (SOAHR). Medicaid has become part of the Department of Community Health. The agencies have agreed between themselves to have the DHS determine eligibility and conduct administrative hearings on the same on behalf of DCH. (DHS-AH) Hearings on medicaid services are conducted by DCH-AT. The regulations contained in the Consent Judgment have been amended and no longer exist in the same form at all. New regulations are referenced in the petition for contempt. These changes alone substantially undermine the continued viability of the provision of the Consent Judgment.

But more importantly, decisions by the United States Supreme Court, this circuit, and other district courts indicate that the Consent Judgment should be ended. It is now clear, if it wasn't before, that to seek redress under 42 U.S.C. § 1983, a plaintiff must assert a violation of a federal right, not merely a violation of a federal law. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). Three factors are pertinent to the determination of whether a statute confers a viable

§ 1983 action: (1) Congress must have intended the provision to benefit the plaintiff; (2) the statute is not so "vague and amorphous" that its enforcement would strain judicial competence; and (3) the provision imposes a binding obligation on the state, i.e., it must be couched in mandatory, rather than precatory, terms. *See, Johnson v. City of Detroit*, 446 F.3d 614, 621 (6th Cir. 2006) *citing Blessing* at 340-341. Subsequent to *Blessing*, the Supreme Court decided *Gonzaga University v. Doe*, 536 U.S. 273 (2002), which further defined the necessary congressional intent, holding that legislation granting federal funding for state programs, such as Medicaid or Food Stamps, typically does not confer enforceable individual rights under §1983. The Court observed that it had found such enforceable rights only twice in the previous 21 years and "our more recent decisions . . have rejected attempts to infer enforceable rights from Spending Clause statutes." 536 U.S. at 280-281. "A plaintiff can no longer satisfy the first element of the *Blessing* test because he or she receives a benefit from the statute at issue or is within its zone of interest. Instead, under *Gonzaga's* more exacting standard, the text and structure of the statute in question must be examined to determine whether Congress intended to create a federal right; such a right must be gleaned from unambiguous, explicit rights-creating language that focuses on 'rights,' not broader or vaguer 'benefits' or 'interests.'" *Johnson v. City of Detroit*, 446 F.3d 614, 621 (6th Cir. 2006), accord, *Smith v. AuSable Valley Community Mental Health*, 431 F. Supp 2d 743, 748-51 (E.D. MI 2006) (Edmunds, J.) (discussing whether the Medicaid Act created private rights enforceable under section 1983, and after careful analysis, concluding that no such rights were created).

It is important to recognize in this case that relief was not premised on violation of a federal statute but on non-compliance with federal regulations. Federal regulations are not enacted by Congress. They are promulgated by the agency which receives the funding. It follows then, that where purported "rights" arise solely from federal regulations as opposed to federal statutes or the Constitution, they are not enforceable under § 1983. Our circuit recognized this in *Caswell v. City of Detroit Housing Comm'n*, 418 F.3d 615, 618 (6th Cir. 2005), where it held that rights arising from regulations are different from statutory rights, citing *Alexander v. Sandoval*, 532 U.S. 275 (2001) and *Gonzaga v. Doe,* 536 U.S. 273. The Circuit Court highlighted the statements in *Sandoval*, 532 U.S. at 291: "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." The Court observed: "Agencies may play the sorcerer's apprentice but not the sorcerer himself." *Id*. Because Caswell's claim for benefits arose from a regulation, rather than from the statute itself which was silent on the point, the court concluded that *Caswell* could not state a claim under § 1983. Likewise here. Where plaintiffs' relief in the Consent Judgment is grounded only on regulations (and it should be noted that these regulations have been amended and essentially no longer exist), and are without textual statutory basis, and where there is no showing that Congress intended to create such enforceable individual rights, there is no basis for a private suit under Section 1983. Therefore, the Consent Judgment must be vacated, the Petition to hold defendants in contempt denied, and the case dismissed with prejudice.

**Discussion**

*Plaintiffs' Claims in the Petition for Contempt*

Plaintiffs allege that currently benefits dispositions are untimely under the consent judgment, that defendants are miscounting the number of days, that there is inadequate staffing, and applicants who wish to have their new evidence considered by the ALJ are required to waive their right to a timeliness determination.  Plaintiffs ask for a period of discovery and a new court order requiring defendants to pay fines to individuals whose hearing requests have been pending longer than 60 or 90 days; requiring defendants to provide the requested benefits, pending outcomes of the hearings; prohibiting the defendants from recouping any amount paid out pursuant to the relief granted above; fine defendants a daily amount until such time as timeliness requirements are met; require defendants to report to plaintiffs' attorneys on the number and percentage of timely hearings on a monthly and annual basis; prohibit defendants from requiring any class member to waive the right to a timely hearing as a condition of presenting additional evidence at a hearing; stop tolling the timeliness standard when defendants seek [expert] opinions regarding medical evidence; and order defendants to pay petitioners reasonable attorneys fees in connection with this action.

*Defendants' Position*

Defendants argue that the Consent Judgment should be vacated. They note the legal developments discussed above and also the absence of standing of any of the named class members.

*Analysis*

*1. Standing*

With respect to standing, none of the named plaintiffs (Hellem and the Basels) are currently receiving or seeking public benefits. Thus, they cannot complain and the case is moot as to them. Plaintiffs have offered new plaintiffs with affidavits about their particular situations and argue they meet the class criteria and should be substituted for the named plaintiffs if needed. They further argue that the class was certified and the issue of standing is an inappropriate attempt to decertify the class.

The class was certified by stipulation to consist of "all persons who have applied to the MDSS for a hearing pursuant to 45 CFR 205.10(a)(16) with respect to Aid to Families with Dependent Children, Medical Assistance, and Social Services claims, or pursuant to 7 CFR 271.1(o) with respect to Food Stamp Program claims, and who have not received final administrative action as of the date of this Consent Judgment, as well as all persons who may request such hearings in the future." (¶1) The purported class members identified by plaintiffs' counsel do not fit that criteria. This is due, undoubtedly, to the fact that the relevant regulations no longer exist, that the DSS no longer exists, and the benefits which the class members

currently receive and/or are seeking are not regulated by the terms of the Consent Judgment. Thus, the Petition could be dismissed on this ground[4].

2. *The Consent Judgment Should be Vacated.*

Federal Rule of Civil Procedure Rule 60(b) provides that a court may relieve a party from a final judgment, order, or proceeding on any one of several grounds, including "any other reason that justifies relief." Rule 60(b)(6). Listed reasons include that there is newly discovered evidence, that the judgment is void, that the judgment has been satisfied, released or discharged, that it is based on an earlier judgment that has been reversed or vacated; or that applying it prospectively is no longer equitable.

*A. The Judgment May be Void and, In Any Event, Enforcement is No Longer Equitable.*

There remains an open question of whether federal subject matter jurisdiction ever existed so as to provide a basis for entry of the judgment. Plaintiffs have never been required to demonstrate a claim cognizable under Section 1983. Their complaint did not allege deprivation of any right secured by the Constitution or laws of the United States.[5] The Consent Judgment found no violation of the Constitution or laws of the United States; indeed, it did not find any clear violation even of any federal regulation. The most that could be said is in Par 2 where the

---

[4]If so, if the court were to hold that there were no class members with standing to pursue contempt, it would raise the specter of whether the consent judgment had become moot and would lead to the same issues raised directly by defendants in their motion to vacate.

[5]The court recognizes that a private right of action is not necessarily a component of subject-matter jurisdiction, see *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308, 125 S.Ct. 2363 (2005), but allegation of a federal statutory or constitutional right is.

parties stipulated that there was evidence of non-compliance regarding the time limits under two regulations and there was a substantial backlog. Agreements of parties cannot confer subject matter jurisdiction on the court, and section 1983 is not a source of substantive rights by itself. *Meals v. City of Tennessee,* 493 F.3d 720, 727 (6th Cir 2007). Section 1983 provides a vehicle for enforcement of federal rights secured elsewhere. *Id.* Plaintiffs have not identified any federal statutory rights which would give rise to federal jurisdiction. The Consent Judgment did not have any findings of jurisdiction and thus, reliance on it is problematic as well as tautological. Thus, plaintiffs have not established federal jurisdiction, let alone an entitlement to federal injunctive relief.

The specter of continued litigation where there has never been a judicial determination of any federal statutory violation is problematic. Under Fed.R.Civ.P. Rule 65, injunctive relief is an extraordinary remedy whose purpose is generally to preserve the status quo. In addition, courts normally grant injunctive relief only upon a showing by the movant sustaining a finding of irreparable injury, that plaintiffs have a strong likelihood of success on the merits, that the injunction is in the public interest, and that issuance of the injunction would not cause substantial harm to others. *Chabad of S. Ohio v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004).

As has been discussed by many courts, *see, Coalition to Defend Affirmative Action v. Granholm,* 2006 WL 3831217 (6th Cir. 2006), and by Congress, see, e.g., 18 U.S.C. § 3626(b)(2), a district court should not require a unit of state or local government to abide by a consent decree that does not serve any federal interest. "The court must ensure that there is a substantial federal claim, not only when the decree is entered, but also when it is enforced, and

that the obligations imposed by the decree rest on this rule of federal law rather than the bare consent of the office holder." *Evans v. City of Chicago,* 10 F.3d 474 (7th Cir.1993) [Evans III]. "Courts must be especially cautious when [state officials] seek to achieve by consent decree what they cannot achieve by their own authority." *League of United Latin American Citizens v. Clements,* 999 F.2d 831, 846 (5th Cir.1993) (en banc). "Judicial approval ... may not be obtained for an agreement which is ... contrary to the public interest." *Williams v. Vokovich* 720 F.2d 909, 920 (6th Cir.1993). A court must identify the rule of law that supports a consent decree and binds the political arms of government. In making such inquiry, the court is bound by principles of federalism and by the fundamental differences between judicial and political branches of government. *Evans* at 479. Because consent decrees require continuing supervision by the district court, judges need a good reason, one in addition to the parties' agreement before diverting attention from other business in this fashion. *Id.* at 477, citing *System Federation v. Wright,* 364 U.S. 642, 651, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961).

Here, the Consent Judgment contains no findings regarding the appropriateness of entry of a injunctive relief or the authority of an Assistant Attorney General as an officeholder to bind the state. The consent judgment sought to enforce time limits for administrative hearings set forth in 1976 and 1977 regulations. The regulations underlying the consent judgment have since been amended and in some respects eliminated. The applicable section of the food stamp regulation, 7 C.F.R. § 271.1(o), has been eliminated. The regulation now includes only subparagraphs (a) and (b). Defendants did not agree to be bound for the purposes of the consent judgment by any additional statutes or regulations. Plaintiffs never sought an amendment of the

Consent Judgment under Fed. R. Civ. P. Rule 60 to include any new or amended regulations. Nor did they seek amendments to address structural changes to administration and funding of benefits, i.e. block grant funding and changes in Michigan's departmental organization. The judgment itself recognized that the law was organic, subject to change, and permitted a party to seek modification of the judgment. Plaintiffs never sought modification of any of the terms of the judgment and cannot attempt to do so here through a motion couched in terms of contempt. To the extent that the petition could be read to infer an attempt to amend the Consent Judgment, it must be rejected.

>    *B. Intervening legal developments require the Consent Judgment to be vacated.*

In *Gonzaga University v. Doe* 536 U.S. 273, 122 S.Ct. 2268 (U.S. 2002), a former university student sued Gonzaga under §1983, alleging violations of Family Educational Rights and Privacy Act (FERPA). The United States Supreme Court, Chief Justice Rehnquist, held that FERPA's non-disclosure provisions created no personal rights to enforce the statute. Thus, there was no available action under § 1983. The Court noted that *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1 (1984) made clear that unless Congress "speak[s] with a clear voice," and manifests an"unambiguous" intent to create individually enforceable rights, federal funding provisions provide no basis for private enforcement by § 1983. In *Gonzaga*, the Court recognized that whether a statutory violation may be enforced through § 1983 is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute. "But the inquiries overlap in one meaningful respect–in either case we must first determine whether Congress *intended to create a federal right.* Thus we have held that the

- 13 -

question whether Congress ... intended to create a private right of action is definitively answered in the negative where a statute by its terms grants no private rights to any identifiable class. For a statute to create such private rights, its text must be phrased in terms of the persons benefitted." 536 U.S. at 283-284 (emphasis in original) (internal quotation marks and citations omitted).

Our circuit followed those holdings, and that of *Alexander v. Sandoval*, 532 U.S. 275 (2001)[6] in its 2005 decision in *Caswell v. City of Detroit Housing Com'n* 418 F.3d 615, 618 -620 (6th Cir. 2005). "Accordingly, when *Sandoval* and *Gonzaga* are read together, it becomes clear that in order for Caswell to bring a viable claim under § 1983, he must show that the right, of which he seeks vindication, is conferred by Congress in 'clear and unambiguous terms.'" The *Gonzaga* Court stated:"[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." 536 U.S. at 286.

Both the Supreme Court and our circuit were careful to note that: "Furthermore, the right conferred must be "phrased in terms of the persons benefitted." *Gonzaga* at 284, *Caswell* at 618-

---

[6] In *Sandoval,* the Supreme Court held that there was no private cause of action to enforce Title VI regulations. 532 U.S. at 293. The Court stated that "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not.... Agencies may play the sorcerer's apprentice but not the sorcerer himself." *Id.* at 291. But, plaintiffs in *Sandoval* had not pursued a cause of action under §1983; rather, the plaintiffs argued that an implied cause of action existed directly under Title VI and its accompanying regulations. *See id.* at 299-300(Stevens, J., dissenting) ("[T]o the extent that the majority denies relief to the respondents merely because they neglected to mention 42 U.S.C. §1983 in framing their Title VI claim, this case is something of a sport."). Nevertheless, the Court in *Gonzaga* shed further light on this issue by applying *Sandoval* 's logic to § 1983 cases.

620.  "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Sandoval,* 532 U.S. at 289.  The Court made clear in *Gonzaga* that where a statute simply prohibits certain conduct, or sets forth a policy, that statute does not create a cause of action or other rights for the individual protected by the statute.  *See Gonzaga*, 536 U.S. at 287-288.  Thus, even assuming the regulations here were a statute enacted by Congress, the time limitations are directed toward the State, not the welfare recipients, so it would follow that no individual right of enforcement would be conferred to these plaintiffs.

In *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 119-120 (2005), the Court again emphasized that "Our subsequent cases have made clear, however, that § 1983 does not provide an avenue for relief every time a state actor violates a federal law.  As a threshold matter, the text of § 1983 permits the enforcement of '*rights,* not the broader or vaguer 'benefits' or 'interests.'  *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283 (2002) (emphasis in original).  Accordingly, to sustain a § 1983 action, the plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs."  Plaintiffs have not done so here, and they alleged no statutory violation at any time from 1974 to the present.

### C. The Kind of Relief Sought Weighs in favor of Vacating the Consent Judgment

Indeed, the very kind of relief plaintiffs seek compels the conclusion that the judgment should be vacated.  In the instant case, plaintiffs claim a violation of certain federal regulations.  However, the federal court has not ever determined that there is a substantial federal claim.

Instead, the parties have stipulated for entry of a consent judgment calling for timeliness requirements, reports to plaintiffs' attorneys on the number and percentage of timely hearings, and state-paid monitoring.  Plaintiffs now seek to impose daily fines, prohibit defendants from requiring any class member to waive the right to a timely hearing as a condition of presenting evidence at a hearing, stop tolling the timeliness standard when defendants seek [expert] opinions regarding medical evidence, and order defendants to pay petitioners reasonable attorneys fees in connection with this action.  The right to "fair hearings" articulated in the judgment is the kind of vague "right" which clearly "strains judicial competence."

This is particularly true when no federal court ever engaged in a reasoned process to determine that the terms of the consent judgment further the interests of all parties and the public. While plaintiffs claim a definite benefit for persons seeking welfare benefits hearings, there has not been any determination that the judicial directive remedies a deprivation of a federal right.  Subsequent legal developments have show that it is exactly this kind of decree entered on the parties say-so and requiring continued judicial oversight that has been the subject of abuse in the past in other areas of institutional litigation and has required re-examination of such consent decrees dating from the 1970s and 1980s. See, e.g., *Rufo v. Inmates of Suffolk Co. Jail,* 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992); *Sweeton v. Brown,* 27 F.3d 1162 (6th Cir. 1994).  The district court is ill-suited to supervision of discovery, monitoring, and enforcement of court-required staffing levels premised on 30 year old technology, particularly when intruding on the bureaucracy of another sovereign.  Courts may, in appropriate cases, provide relief that benefits individuals who were not initially involved.  In such cases, the court

retains jurisdiction to modify the consent judgment, even over the objection of a signatory, and non-compliance is enforceable through contempt. See, *Firefighters v. Cleveland,* 478 U.S. 501, 518, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986). However, the consent decree must spring from and serve to resolve a dispute within the court's subject matter jurisdiction. *Id.* At 525. A federal court is more than a recorder of contracts from whom parties can purchase injunctions, it is an organ of government constituted to make reasoned judicial decisions. *Firefighters v. Cleveland,* 478 U.S. 501, 525, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986).

Because the consent decree as entered here entangles an arm of federal government in the administration of another sovereign, it affects that sovereign's budgetary decisions, taxpayers rights, rights of other citizens with different needs, as well as future officials. While a court may involve itself in such issues when there is justification, the parties consent is not automatically sufficient. Cf. *Missouri v. Jenkins,* 495 U.S. 33, 110 S.Ct. 1651(1990). In addition, consent alone is insufficient to support a commitment by a public official that ties the hands of his successors. *Evans* at 478; *League of United Latin American Citizens v. Clements,* 999 F.2d 831, 846 (5th Cir.1993) (en banc).

Additionally, the court is concerned regarding attorneys fees for on-going issues and future aspects of the litigation, particularly when defendant has seemed to agree to all the relief sought and the court has resolved no aspect of the case in a "concrete and irreversible" way. *Dupuy v. Samuels,* 423 F.3d 714 (7th Cir. 2005). Generally, each party in litigation is to bear its own costs. Because Section 1983 is a fee-shifting statute, a court in its discretion may award reasonable attorney fees to a prevailing plaintiff. *Buckhannon Board & Care Home v. West*

*Virginia Dept. Of Health & Human Services,* 532 U.S. 598 (2001); *Maher v. Gagne,* 448 U.S. 122 (1980). The consent decree may provide "prevailing party" status. But establishment of prevailing party statues does not make all later work compensable. *Cody v. Hillard,* 304 F.3d 767, 773 (8th Cir.2002). There the court reviewed limitations on compensability, including the degree of success in the case as a whole, whether post-judgment work is a necessary adjunct to the initial litigation, whether the case has been over-litigated by plaintiff, and if the services were redundant, inefficient, or unnecessary. *Id.*

**Conclusion**

For the reasons discussed above, the petition to find defendants in contempt should be denied. The Consent Judgment should be vacated and the case dismissed with prejudice and without costs.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                               s/Virginia M. Morgan
                                               Virginia M. Morgan
                                               United States Magistrate Judge

Dated: March 12, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on March 12, 2009.

                                               s/Jane Johnson
                                               Case Manager to
                                               Magistrate Judge Virginia M. Morgan