UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CARMELLA BASEL, et al,

       Plaintiffs,

v.

CHESTER BIELACZYZ, et al,

       Defendants,

       Case Number 74-40135-BC
       Honorable Thomas L. Ludington

LOLA HELLEM, et al,

       Plaintiffs,

v.

JOHN T. DEMPSEY,

       Defendant.
_____/

**ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE, SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFFS' OBJECTIONS, DENYING PLAINTIFFS' PETITION TO HOLD DEFENDANTS IN CONTEMPT, GRANTING DEFENDANTS' MOTION TO VACATE CONSENT JUDGMENT, DISSOLVING INJUNCTION AND VACATING CONSENT JUDGMENT, AND TERMINATING THE COURT'S JURISDICTION**

This action, which combined two cases, was initiated in 1974 by Plaintiffs against certain Michigan officials and challenged the timeliness with which Plaintiffs received hearings on their applications for certain federal, public benefits administered by the State. The action culminated with the entry of a consent judgment on September 13, 1977, in which the Court certified a plaintiff class and retained jurisdiction to enforce the provisions of the consent judgment. Generally, the consent judgment permanently enjoined Defendant John T. Dempsey, then-Director of the

Department of Social Services, and his successors from failing to accord the plaintiff class final and definitive administrative action on their hearing requests.

On June 19, 2008, Plaintiffs filed a petition to hold Defendants in contempt, which was stricken by the Court for failing to comply with a local rule. Plaintiffs refiled the petition [Dkt. # 8] on July 11, 2008, in compliance with the local rule. On July 8, 2008, Defendants filed a motion to vacate the consent judgment [Dkt. # 5]. Now before the Court is a report and recommendation [Dkt. # 20] issued by Magistrate Judge Virginia M. Morgan on March 12, 2009. The magistrate judge recommends vacating the consent judgment pursuant to Federal Rule of Civil Procedure 60(b)(6), primarily because there are no longer any plaintiffs with standing to sue, subsequent changes in the law have clarified that the consent judgment does not vindicate any privately enforceable federal rights, and the consent judgment did not adjudicate a violation of federal law and does not serve a federal interest.

On March 26, 2009, Plaintiff filed objections [Dkt. # 21] to the report and recommendation. On April 6, 2009, Defendants filed a response to the objections [Dkt. # 22]; and on April 13, 2009, Plaintiffs filed a reply. For the reasons stated below, Plaintiffs' objections will be sustained in part and overruled in part, and the report and recommendation will be adopted in part and rejected in part. The consent judgment will be vacated, the injunction dissolved, and the Court's jurisdiction terminated.

I

An opening paragraph, or preamble, to the consent judgment provides a general description of the claims alleged by Plaintiffs in this action, prior to the entry of the consent judgment:

> Plaintiffs, having alleged in their complaints that the defendants have failed to provide prompt, final, and definitive administrative action on administrative hearing

-2-

requests within 90 days of such requests in Aid to Families with Dependent Children, Medcaid and Social Services cases, and within 60 days of such requests in Food Stamp cases, in violation of their rights under the Social Security Act, the Food Stamp Act, and the regulations thereunder, and the First and Fourteenth Amendments to the United States Constitution; and the defendants, herein, being desirous of assuring that plaintiffs and their class are provided prompt, final, and definitive administrative action on hearing requests within the stated time limits without the necessity for full and complete litigation of the issues raised in plaintiffs' complaints . . .

Pls.' Pet. Ex. A (Consent J.).

The consent judgment also describes the class that it certifies:

For purposes of the final relief set forth in this Consent Judgment, a class is hereby finally certified, consisting of all persons who have applied to the Michigan Department of Social Services for a hearing pursuant to 45 CFR 205.10(a)(16) with respect to Aid to Families with Dependent Children, Medical Assistance, and Social Services claims, or pursuant to 7 CFR 271.1(o) with respect to Food Stamp Program claims, and who have not received final administrative action as of the date of this Consent Judgment, as well as all persons who may request such hearings in the future.

Consent J. ¶ 1.

In paragraph three, the consent judgment identifies the fact that "the parties undertook an empirical study of a random sample of hearing requests filed by plaintiffs and their class during calendar 1975 and plaintiffs' counsel and defendants' counsel each produced an analysis of the data collected in the study." The paragraph notes that the study provided the basis for the relief stipulated to by the parties. Paragraph two documents "defendants' non-compliance with the time limitations set out in 45 CFR 205.10(a)(16) (1976) and 7 CFR 271.1(o) (1977)," and the fact that "a substantial backlog of hearing requests has developed and continues to grow."

The injunction granted by the consent judgment is set forth in paragraph four:

Effective July 1, 1978, the defendant John T. Dempsey, his successors, officers, agents, employees and persons in active concert with him are permanently enjoined from failing to accord to plaintiffs and their class prompt, final and definitive administrative action on their hearing requests within 90 days of such requests regarding Aid to Families with Dependent Children, Medical Assistance and Social Services cases, and within 60 days

of such requests in Food Stamp cases.

Later, paragraph eight defines the dates on which the time limits begin to run and the date on which a final and definitive administrative action is deemed to be accomplished.

Paragraph five sets forth specific measures to be taken by Defendant Dempsey. Subparagraph (a) addresses staffing levels and requires that there should be one full-time administrative law judge, thirty-percent of one full-time typist, and twenty-five percent of one full-time case management clerk for every 285 hearing requests received annually. Subparagraph (b) provides a graduated time schedule for reducing the backlog of hearing requests. Subparagraph (c) requires Defendant Dempsey to "promulgate guidelines for staff in the Bureau of Administrative Hearings setting the maximum time which the component steps of the hearing process may consume . . ." Initial guidelines are provided, but it is noted that the guidelines may be "readjusted by the defendant as experience indicates is necessary."

Paragraph six describes certain "minimum" modifications that Defendant Dempsey was required to make to procedures "to assure that hearing decisions are implemented in a timely manner whenever the hearing decision requires that a county department take further action to implement the decision."

Paragraph seven describes the information that Defendant Dempsey was required to provide to plaintiffs' counsel to assist in monitoring compliance with the order, the information to be provided over a period of approximately three years subsequent to entry of the order.

Paragraph nine explains that "the only proper measure of compliance is the timely processing of each hearing request within the federal time limits by July 1, 1978." Thus, it is noted that "non-compliance with the specific requirements set forth in paragraph 5(a), (b) and (c) does not constitute

a violation of this Consent Judgment provided that the overall federal time limits required to be met by paragraph 4 are being met." Conversely, "compliance with the specific requirements set forth in paragraph 5(a), (b) and (c) above, absent compliance with paragraph 4, does not constitute compliance with this Consent Judgment."

In paragraph ten, the Court retained jurisdiction over the action to enforce the provisions of the consent judgment. Paragraph eleven addresses the possibility of modification of the consent judgment:

> In view of the fact that federal benefit programs are subject to change, nothing in this Consent Judgment shall be construed to deny to any party to this action the right to move the Court for modification of such Consent Judgment in the event that changes in federal law occur which would conflict with its provisions.

Finally, paragraph twelve grants Plaintiffs' costs and reserves the issue of attorney fees until after entry of the consent judgment.

II

Federal Rule of Civil Procedure 60(b) describes six possible grounds for relief from a final judgment, order, or proceeding. Three of those grounds are pertinent to the discussion in this case. Under Rule 60(b)(4), relief from a judgment may be granted by a court if "the judgment is void." Under Rule 60(b)(5), relief from a judgment may be granted by a court if "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Under Rule 60(b)(6), relief may be granted by a court for "any other reason that justifies relief." Relief under each section of the rule is "circumscribed by public policy favoring finality of judgments and termination of litigation." *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 623 (6th Cir. 2008).

A

In the report and recommendation, the magistrate judge suggests that "the judgment may be void," presumably, pursuant to Rule 60(b)(4). The magistrate judge suggests that the Court did not have subject matter jurisdiction at the time that it entered the consent judgment because § 1983 does not give rise to subject matter jurisdiction and Plaintiffs did not identify any federal statutory rights which would give rise to federal jurisdiction. The magistrate judge also emphasizes the fact that the consent judgment does not include any jurisdictional findings. The magistrate judge suggests that these circumstances are problematic because "a consent decree must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction," quoting *Firefighters v. Cleveland*, 478 U.S. 501, 518, 525 (1986).

The Court will decline to adopt the portion of the magistrate judge's analysis regarding subject matter jurisdiction and will sustain Plaintiff's objections consistent with the discussion below. In *Travelers Indemnity Co. v. Bailey*, the U.S. Supreme Court recently reaffirmed the principle that "subject-matter jurisdiction . . . may not be attacked collaterally." 129 S. Ct. 2195, 2205 (2009) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 n.9 (2004)). The Court recognized, however, that "[t]he rule is not absolute," *id.* at 2206 n.6 (internal citations omitted), and cited the Restatement (Second) of Judgments § 12, p. 115 (1980), which identifies three exceptions to the rule. *Id.* The Court listed the three exceptions, but noted that there was "no occasion to address whether we adopt all of these exceptions." *Id.* The exceptions include:

(1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or

(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or

(3) The judgment was rendered by a court lacking capability to make an adequately

> informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

*Id.* (quoting § 12).

Even if one of these exceptions were to be adopted and deemed applicable to the circumstances of this case, the argument that the Court lacked subject matter jurisdiction at the time that it entered the consent judgment is not persuasive. While the magistrate judge concluded that the federal regulations cited in the consent judgment were not enforceable under § 1983, that does not justify the conclusion that the Court lacked subject matter jurisdiction. The preamble to the consent judgment clearly states that, in their complaint, Plaintiffs alleged violations of "the Social Security Act, the Food Stamp Act, and the regulations thereunder, and the First and Fourteenth Amendments to the United States Constitution."

While a full adjudication of Plaintiffs' statutory and constitutional claims may have revealed that the claims were without merit, that would not mean that the Court lacked jurisdiction to address the claims. In other words, "[f]ederal subject matter jurisdiction lies so long as the complaint is drawn so as to seek recovery directly under the Constitution or laws of the United States . . . where the claim is not patently immaterial or wholly insubstantial or frivolous, even if upon analysis it turns out that the plaintiff's claim is incorrect." *Sweeton*, 27 F.3d 1162, 1173 (6th Cir. 1994) (en banc) (Jones, J., dissenting) (addressing dicta in the concurring opinion). Based on the claims that Plaintiffs alleged under federal statutes and the U.S. Constitution, and the fact that issues related to sovereign immunity have not been raised, it appears that the consent judgment did in fact "spring from and serve to resolve a dispute within the court's subject-matter jurisdiction," *Firefighters*, 478 U.S. at 518. Thus, rejecting the judgment as void pursuant to Rule 60(b)(4) is not warranted and

Plaintiffs' objections will be sustained consistent with the discussion above.

B

Under Rule 60(b)(5), relief from a judgment may be granted by a court if "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." The magistrate judge did not explicitly cite Rule 60(b)(5) in her analysis, however, much of the analysis in the report and recommendation is relevant to analysis under that subsection and the analysis will be further developed here. In addition, Plaintiff's objections related to Rule 60(b)(5) will be sustained in part and overruled in part, consistent with the discussion below.

In *United States v. Swift & Co.*, the U.S. Supreme Court established that to justify modifying or vacating a judgment, "[n]othing less than a clear showing of a grievous wrong evoked by new and unforeseen conditions," is required under Rule 60(b)(5). 286 U.S. 106, 119 (1932). Subsequently, in *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992), the Court relaxed the standard applicable to institutional reform litigation.[1] In these types of cases, a judgment may be modified or vacated under Rule 60(b)(5) if " 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.' " *Horne v. Flores*, 129 S. Ct. 2579, 2593 (2009) (quoting *Rufo*, 502 U.S. at 384).[2]

---

[1] *See Heath v. DeCourcy*, 888 F.2d 1105, 1108 (6th Cir. 1989) (broadly defining an institutional consent decree as "a consent decree which affects the operation of a governmental institution or organization").

[2] Shortly after *Rufo* was decided, the Sixth Circuit reaffirmed the test it had developed to address relief from institutional reform consent decrees in *Lorain NAACP v. Lorain Board of Education*:

> The court need only identify a defect or deficiency in its original decree which impedes achieving its goal, either because experience has proven it less effective, disadvantageous, or because circumstances and conditions have changed which warrant fine-tuning the decree.

When the Court relaxed the standard, the Court noted the "upsurge in institutional reform litigation" and the ability of consent decrees to "reach beyond the parties involved directly in the suit and impact on the public's right to sound and efficient operation of its institutions." *Rufo*, 502 U.S. at 380-81. The Court further emphasized that because "such decrees often remain in place for extended periods of time, the likelihood of significant changes occurring during the life of the decree is increased," which "has made the ability of a district court to modify a decree in response to changed circumstances all the more important." *Id.* at 380. The Court has noted that significant changes that may "warrant reexamination of the original judgment" include "changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights." *Horne*, 129 S. Ct. at 2593.

Additionally, the Court has emphasized that such injunctions "often raise sensitive federalism concerns" because they "commonly involve areas of core state responsibility." *Id.* (internal citations omitted). "Federalism concerns are heightened when . . . a federal court decree has the effect of dictating state or local budget priorities." *Id.* at 2594. The Court has also expressed concern that "[i]njunctions of this sort bind state and local officials to the policy preferences of their predecessors and may thereby 'improperly derive future officials of their designated legislative and executive powers.' " *Id.* (quoting *Frew v. Hawkins*, 540 U.S. 431, 441 (2004)).

Based on these concerns, the Court has explained that "[a] flexible approach allows courts to ensure that 'responsibility for discharging the State's obligations is returned promptly to the State

---

979 F.2d 1141, 1149 (6th Cir. 1992) (quoting *Heath*, 888 F.2d at 1110). Under this standard, the court must "balance the interest in preserving consent decrees entered into by agreement between private parties against the public interests sought to be achieved through modification of the decree." *Id.* (quoting *Heath*, 888 F.2d at 1110).

and its officials' when the circumstances warrant." *Id.* at 2595 (quoting *Frew*, 540 U.S. at 442). Such circumstances occur at least when "the objects of the decree have been attained." *Id.* at 2596 (internal quotations omitted). The Court has emphasized that "[i]n applying this flexible approach, courts must remain attentive to the fact that 'federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate federal law or does not flow from such a violation.' " *Id.* at 2595 (quoting *Milliken v. Bradley*, 433 U.S. 267, 282 (1977)). In other words, the court must "ascertain whether ongoing enforcement of the original order [is] supported by an ongoing violation of federal law." *Id.* at 2597; *see also Frew*, 540 U.S. at 437-39 (enforcing a decree and noting that "enforcing the decree vindicates an agreement that the state officials reached to comply with federal law," when "[t]he decree is a federal-court order that springs from a federal dispute and furthers the objectives of federal law").

Despite emphasizing a flexible approach, the Court has cautioned that "Rule 60(b)(5) provides that a party may obtain relief from a court order when 'it is no longer equitable that the judgment should have prospective application,' not when it is no longer convenient to live with the terms of a consent decree." *Rufo*, 502 U.S. at 383. The Court explained:

> Modification of a consent decree may be warranted when changed factual conditions make compliance with the decree substantially more onerous, . . . when a decree proves to be unworkable because of unforeseen obstacles, . . . or when enforcement of the decree without modification would be detrimental to the public interest.

*Id.* at 384-85 (internal citations omitted). "Ordinarily, however, modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Id.* at 385. In contrast, a consent decree must be modified if "one ore more of the obligations placed upon the parties has become impermissible under federal law." *Id.* at 388. Modification may also be warranted if "the statutory or decisional law has changed to make legal what the decree was

-10-

designed to prevent." *Id.*

The Court has also noted that state or local governments may through consent decrees undertake to do more than federal law requires, or more than a court could order absent the settlement, to "save themselves the time, expense, and inevitable risk of litigation." *Id.* at 389. Thus, the Court has emphasized that "[t]o hold that a clarification in the law automatically opens the door for relitigation of the merits of every affected consent decree would undermine the finality of such agreements and could serve as a disincentive to negotiation of settlements in institutional reform litigation." *Id.* The Court emphasized that clarification of the law "could constitute a change in circumstances that would support modification if the parties had based their agreement on a misunderstanding of the governing law." *Id.* at 390.

Once a court has determined that modification of a consent decree is warranted, the court must analyze "whether the proposed modification is tailored to resolve the problems created by the change in circumstances." *Id.* at 391 (noting that "a consent decree is a final judgment that may be reopened only to the extent that equity requires"). Under certain circumstances, equity may require vacation of a judgment, rather than modification. When faced with an injunction, the Sixth Circuit has applied the general principle that "[o]ngoing injunctions should be dissolved when they no longer meet the requirements of equity." *Sweeton*, 27 F.3d at 1166. *See also Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 466 F.3d 391, 395 (6th Cir. 2006) (noting that "if a party seeks to have a decree set aside entirely, he or she has to show that the decree has served its purpose, and there is no longer any need for the injunction") (quoting Moore's Fed. Practice § 60.47[2][c] (3d ed. 2005) (further internal citations omitted).

-11-

In *Sweeton*, for example, the Sixth Circuit vacated a consent decree imposing ongoing injunctive relief, based on the conclusion that "[t]he foundation upon which the claim for injunctive relief was built has crumbled." 27 F.3d at 1166. The plaintiffs had challenged the enforcement of state parole regulations and subsequent case law had clarified that "federal courts should no longer as a matter of federal due process seek to enforce purely procedural parole regulations." *Id.* The court concluded that "decisional law has changed so that the enjoined behavior, which once *might* have been a violation of federal law, is not longer a matter of federal law at all." *Id.* (emphasis in original). *See also Doe v. Briley*, 562 F.3d 777, 782-84 (6th Cir. 2009) (vacating a consent decree that must have been based "on an earlier misunderstanding of the governing law" when there was a change in decisional law similar to *Sweeton*). *But see Sweeton*, 27 F.3d at 1171 (Jones, J., dissenting) (criticizing the majority for being "silent as to whether complete vacation is the only option, or whether some other less invasive modification might have been more 'suitably tailored to the changed circumstances' " under *Rufo*).

Under the circumstances of this case, Rule 60(b)(5) mandates vacating the consent judgment. By its terms, a significant purpose of the consent judgment was to correct the "substantial backlog of hearing requests," which at that time was continuing to grow. *See* Consent J. ¶ 2. The consent judgment expressed that compliance with its terms required "the timely processing of each hearing request within the federal time limits by July 1, 1978." *Id.* ¶ 9. The consent judgment further provided oversight through the sharing of information with Plaintiffs' counsel for a period of approximately three years. *Id.* ¶ 7. In the years closely following entry of the consent judgment, there is no suggestion on the docket or by the parties that Defendants were ever held in contempt based on a failure to comply with the consent judgment. Later, in 1993, Plaintiffs filed a petition

for contempt, but it was never ruled on by the Court, and in 2001 Plaintiffs filed a petition, but it was stricken by the Clerk's office for failure to comply with a local rule. The terms of the consent judgment and the history of apparent compliance suggest that the consent judgment served its purpose, and at some point, the need for the injunction passed. In other words, the "responsibility for discharging the State's obligations" was long ago ripe to be returned to the State.

Moreover, as the magistrate judge suggests, whether the plaintiff class would have viable federal claims today is highly questionable. The welfare system, Michigan's executive branch procedures and structure, the individuals responsible for implementing the federal regulations, and the technology and means available for implementing the federal regulations have changed. For example, the Michigan Department of Social Services transferred certain responsibilities to the Family Independence Agency, the Department of Human Services, and the Department of Community Health, which have different directors than the Department of Social Services. Additionally, the decisional law regarding private rights of action pursuant to spending clause legislation, federal regulations, and § 1983 has significantly developed in ways that will have a major impact on whether Plaintiffs have valid statutory or constitutional claims based on Defendants' failure to comply with the time limits set by the federal regulations.

While Plaintiffs argue that they still have viable federal claims, their argument underscores the fact that modification of the consent judgment would, in effect, require full litigation of the underlying claims, to ensure that the consent judgment would actually vindicate enforceable violations of federal law. Thus, both the systematic changes that have taken place and developments in the law reinforce the fact that it would not be equitable to enforce the consent judgment.

C

The final subsection of Rule 60 pertinent to the discussion in this case, subsection (b)(6), "applies only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *In re Ferro Corp.*, 511 F.3d at 623. In finding "extraordinary circumstances" warranting relief, "courts have relied on an applicable change in decisional law, coupled with some other special circumstance." *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001). *See also Agostini v. Felton*, 521 U.S. 203, 239 (1997) ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)."). Ultimately, "the decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.' " *Blue Diamond Coal*, 249 F.3d at 529 (quoting *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984)).

In the report and recommendation, the magistrate judge appears to rely on Rule 60(b)(6) to conclude that the consent judgment should be vacated. However, because Rule 60(b)(5) is applicable to the circumstances of this case, Rule 60(b)(6) need not be addressed and the Court will not adopt the analysis as to that subsection. It is worth noting, however, that were relief not available under subsection (b)(5), it would likely be available under subsection (b)(6), based on the same equitable principles. Based on the above, Plaintiff's objections regarding Rule 60(b)(6) will be overruled.

IV

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [Dkt # 20] is **ADOPTED IN PART** and **REJECTED IN PART**, consistent with this opinion.

It is further **ORDERED** that Plaintiffs' objections to the report and recommendation [Dkt. # 14] are **SUSTAINED IN PART** and **OVERRULED IN PART**, consistent with this opinion.

It is further **ORDERED** that Plaintiffs' petition to hold Defendants in contempt [Dkt. # 8] is **DENIED**.

It is further **ORDERED** that Defendants' motion to vacate consent judgment [Dkt. # 5] is **GRANTED**.

It is further **ORDERED** that the injunction entered in this case be dissolved and the consent judgment **VACATED**.

It is further **ORDERED** that this Court's jurisdiction in this matter is immediately **TERMINATED**.

                                                    s/Thomas L. Ludington
                                                    THOMAS L. LUDINGTON
                                                    United States District Judge

Dated: September 1, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 1, 2009.

                                      s/Tracy A. Jacobs
                                      TRACY A. JACOBS